IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **TRUE INDICATING, LLC**<br>946 Kane Street<br>Suite A<br>Toledo, Ohio 43612<br><br>    Plaintiff,<br><br>  v.<br><br>**JULIE ANN WOOD**<br>93 Vandolah Road<br>Three Forks, Montana 59752<br><br>and<br><br>**MESA LABORATORIES, INC.**<br>12100 West 6th Avenue<br>Lakewood, Colorado 80228<br><br>    Defendants. | Case No.<br><br>Judge: |

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION AND DAMAGES WITH JURY DEMAND

For its Complaint against Defendants Julie Ann Wood ("Wood") and Mesa Laboratories, Inc. ("Mesa Labs") (collectively, "Defendants"), Plaintiff True Indicating, LLC ("True Indicating") alleges as follows:

## NATURE OF THE CASE

1. This is an action for the theft of trade secrets, breach of contract, breach of fiduciary duty, and tortious interference with contract arising from the improper and unlawful conduct of True Indicating's former President and minority interest member Defendant Wood and its direct competitor Defendant Mesa Labs.

2.      True Indicating designs, develops, and manufactures industry-leading sterilization and disinfection monitoring products that comply with national and international standards for manufacturers of medical devices and healthcare products, as well as pharmaceutical and biotechnology companies. True Indicating manufactures, markets, and sells chemical and biological indicators to prove the effectiveness of sterilization cycles on a global scale.

3.      To achieve its competitive advantage in the market, True Indicating has developed, acquired, and maintained valuable proprietary and confidential processes, techniques, and systems for use by its employees. True Indicating invested significant time and money to develop and maintain its confidential and proprietary information.

4.      Defendant Wood is the former President and minority interest member of True Indicating. As a high-ranking executive and minority interest member of True Indicating, Defendant Wood had unlimited access to True Indicating's confidential and proprietary information.

5.      True Indicating and Defendant Wood are parties to a written Employment Agreement, dated October 30, 2017 ("Employment Agreement"), which outlined certain restrictive covenants and contractual obligations.  A true and accurate copy of the Employment Agreement is attached hereto as Exhibit A.  Specifically, Defendant Wood agreed to a two-year noncompete obligation in Section 6, which provided:

6.    NON-COMPETITION: NON-SOLICITATION: NON-DISTURBANCE: NON-DISPARAGEMENT.

(a)    During the term of this Agreement, and for a period of twenty-four (24) months thereafter, Employee shall not, without the express prior written consent of Employer, directly or indirectly, render services of any nature to, or for, any entity which engages in any activity competitive with or adverse to Employer's business or practice, whether alone, as a partner, or as an officer, director, employee, or shareholder of any other corporation or as a trustee, fiduciary or other representative, or in any other capacity.

(b)    For a period of twenty-four (24) months after termination of employment, Employee shall not solicit existing clients of Employer, directly or indirectly, or engage either directly or indirectly as an individual stockholder, partner, agent, employee or representative of any firm, person, corporation or association or have any interest, direct or indirect, in any business in competition with the business of Employer.  Given the geographical scope of distribution and marketing activities of Employer, it is the express intention of both Employer and Employee that such restriction shall be international in its application.

6.    Defendant Wood also agreed in Section 6(c) of her Employment Agreement to not solicit any True Indicating employees.  Specifically, Section 6(c) provided:

(c)    Employee shall not, either during or subsequent to the employment term (i) seek to persuade any director, officer or employee of Employer or any affiliate of Employer to discontinue that individual's status or employment with Employer or any such affiliate of Employer or to become employed in any activity similar to or competitive with the activities of Employer or any affiliate of Employer; (ii) hire or retain any such person at any time within twelve (12) months following the date of cessation of employment of such person with Employer or affiliate of Employer; or (iii) directly or indirectly solicit, cause or authorize to be solicited, for or on behalf of herself or any third party, any business from others who were, at any time within five (5) years prior to the expiration or termination of the employment term, customers of Employer or any subsidiary or affiliate of Employer.

7.    In addition, Defendant Wood also agreed in her Employment Agreement to strict "Confidentiality and Non-Disclosure" provisions in Section 7, which provided an extensive definition of what constituted "Confidential Information" and that Defendant Wood "shall never, directly or indirectly, either during or after her employment term, use, publish, disseminate or other disclose any Confidential Information obtained during her employment."

3

8.      Defendant Wood is also a party to True Indicating's written Operating Agreement, dated October 30, 2017 ("Operating Agreement"), which outlines similar restrictive covenants and contractual obligations. A true and accurate copy of the Operating Agreement is attached hereto as Exhibit B.

9.      The Operating Agreement restricts owners, which would include Defendant Wood, from working for a competitor in any capacity while owning a membership interest in True Indicating.  Paragraph 4(I) of the Operating Agreement states:

> I.      Except as otherwise expressly provided in this Section 5, nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any affiliate of any Member, to conduct any other business or activity, so long as such business activity is not in any way, directly or indirectly, competitive with the actual or planned business activities, contracts, and opportunities of the Company, during the time of such Member's membership, and for a period of three (3) years thereafter.  Each member expressly acknowledges that all intellectual property, created during the term of Member's membership interest, whether during normal working hours or otherwise, and all work product reduced to writing in any fashion on any Company provided equipment, whenever utilized or accessed, shall belong exclusively to the Company.

10.      From 2019 to 2022, Defendant Mesa Labs was interested in establishing a business relationship with True Indicating.  Defendant Mesa Labs competes directly with True Indicating using biological and chemical indicators to prove the effectiveness of sterilization methods throughout the world.

11.      Defendant Wood acted on behalf of True Indicating as the main point of contact for these negotiations. During these negotiations, Defendant Mesa Labs requested and received from Defendant Wood a copy of her Employment Agreement.

12.      Defendant Mesa Labs and Plaintiff True Indicating never finalized any formal business relationship. Defendant Mesa Labs had other plans.

13.      In the summer and fall of 2023, Defendant Mesa Labs negotiated and closed on transactions in which it acquired 100% of the outstanding shares of GKE GmbH and SAL GmbH

effective October 16, 2023, and acquired 100% of the outstanding shares of Beijing GKE Science & Technology Co. Ltd. effective December 31, 2023. Defendant Mesa Labs sterilization monitoring products were later branded under GKE.  GKE sterilization products directly compete with True Indicating's products.

14.    On July 14, 2023, at 6:41 PM, Defendant Wood resigned from her position immediately at True Indicating without providing the required 90-days' notice as required by the Employment Agreement.  On a late Friday afternoon, she left an abrupt message that "[a]s of today, I'm retiring from True Indicating, LLC."

15.    Defendant Wood did anything but "retire." Instead, Defendant Mesa Labs extended an offer of employment to Defendant Wood, which she accepted in direct violation of the restrictive covenants contained in the Employment Agreement.

16.    Perhaps even worse, a forensic scan of Defendant Wood's laptop computer shows that she downloaded over 100 computer files during her last week of employment between July 10th and July 14th.  Defendant Wood's last download occurred at 6:08 PM on July 14th—less than 30 minutes before she emailed her resignation.

17.    The downloaded files included highly proprietary information regarding True Indicating's steam indicator technology, client lists, marketing plans, passwords, and a variety of other competitively sensitive information. There would be no reason for Defendant Wood to need that information if she was planning to "retire."

18.    On August 14, 2023, counsel for True Indicating sent a letter to Defendant Wood reminding her of the restrictive covenants and her contractual obligations under the Employment Agreement. A true and accurate copy of the August 14, 2023 letter is attached hereto as Exhibit C. No response was ever received from Defendant Wood.

19.    In November of 2023, executives at True Indicating first suspected that Defendant Wood might be working at Defendant Mesa Labs when her 401(k) provider indicated that she had changed her address to a city north of Boseman, Montana, where Defendant Mesa Labs has a large facility.  Defendant Wood had deleted her LinkedIn profile so that information was difficult to confirm.

20.    On December 5, 2023, counsel for True Indicating sent a letter to Defendant Mesa Labs to inform it of Defendant Wood's Employment Agreement, and the obligations therein. A true and accurate copy of the December 5, 2023 letter is attached hereto as Exhibit D. No response was ever received from Defendant Mesa Labs.

21.    Later, executives at True Indicating confirmed that Defendant Wood was hired as the Director of Quality Assurance and Regulatory Affairs for Defendant Mesa Labs.  Attached as Exhibit E is a "Supply Interruption Notification" that she signed in that capacity on behalf of Mesa Lanbs on May 22, 2024.

22.    Upon information and belief, Defendant Mesa Labs was complicit in—if not facilitated—Defendant Wood's breach of her contractual noncompetition and nondisclosure obligations.

23.    Indeed, Defendants concerted action was most likely strategically timed to inflict the most harm on True Indicating. Defendant Mesa Labs had been a longtime competitor of True Indicating.  But Defendant Mesa Labs' competitive position was significantly enhanced in the fall of 2023, when it "acquired 100% of the outstanding shares of GKE GmbH and SAL GmbH effective October 16, 2023, and upon approval by applicable Chinese regulators, acquired 100% of the outstanding shares of Beijing GKE Science & Technology Co. Ltd. effective December 31, 2023" according to Defendant Mesa Labs' 4th Quarter 10-Q filed with the United States Securities

and Exchange Commission on February 4, 2024. GKE "primarily develops, manufactures and sells a highly competitive portfolio of chemical sterilization indicators, biologics, and process challenge devices to protect patient safety across global healthcare markets. GKE's strength in chemical indicators and our Sterilization and Disinfection Control division's strength in biologic indicators are complementary, as chemical and biologic indicators are used in the same sterility validation workflows." GKE's directly competes against True Indicating and would benefit greatly from access to True Indicating's trade secrets.

24. Upon information and belief, Defendant Wood works in a similar capacity with Defendant Mesa Labs and is more than likely sharing True Indicating's trade secrets with Defendant Mesa Labs and GKE.

25. This theft of trade secrets must be immediately enjoined or True Indicating will sustain a devastating loss of its competitive position to foreign companies facilitated by Defendants Wood and Mesa Labs and in violation of the federal Defend Trade Secrets Act ("DTSA") and the Ohio Uniform Trade Secrets Act ("OUTSA"), in breach of Defendant Wood's contractual obligations under the Employment Agreement and the Operating Agreement, and in breach of Defendant Wood's fiduciary duties owed to True Indicating.

## **PARTIES, JURISDICTION, AND VENUE**

26. Plaintiff True Indicating is an Ohio limited liability company with its principal place of business located at 946 Kane Street, Suite A, Toledo, Ohio.

27. Defendant Wood is an individual residing in Montana at 93 Vandolah Road, Three Forks, Montana 59752. She lived in the State of Michigan during her employment with True Indicating, and she is also a minority interest member in True Indicating. Defendant Wood has been formerly known as "Julie Wheeler."

28.     Defendant Mesa Labs is a publicly held corporation formed under the laws of the State of Colorado with its principal place of business at 12100 West 6th Avenue, Lakewood, Colorado 80228.  It also has offices at 625 Zoot Way, Boseman, Montana 59718. Defendant Mesa Labs is registered to do business in the State of Ohio and regularly conducts business in the State of Ohio.

29.     A similar action between the parties was filed on February 28, 2024 in the Lucas County Court of Common Pleas. The parties stipulated to dismiss the Lucas County case without prejudice on May 28, 2025. Since the dismissal, True Indicating has retained new counsel.

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the law of the United States, including the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims because they are so related to the claim over which the Court has original jurisdiction, that they form part of the same claim or controversy.

31.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

**A.  Prior Negotiations between True Indicating and Mesa Labs**

32.     In August 2019, Defendant Mesa Labs' Vice President of Corporate Development and Strategy Peter Jung ("Jung"), approached True Indicating—specifically Defendant Wood and Thomas Riha ("Riha"), True Indicating's Chief Scientific Officer—with various business proposals to form a commercial relationship. Defendant Mesa Labs proposed options such as an outright acquisition of True Indicating, purchasing a minority equity interest in True Indicating, or establishing licensing or distribution agreements.

33.     On behalf of Defendant Mesa Labs, Jung offered detailed term sheets for both the equity investment and the licensing agreement. True and accurate copies of such term sheets are attached hereto as Exhibit F and Exhibit G.

34.     On or about October 16, 2019, Defendant Mesa Labs sent three representatives— Robert Bradley, Kurt McCauley, and Jung—to visit True Indicating for a tour of its Toledo, Ohio facility and to discuss strategic options. Following the visit, there were several conference calls between the parties to discuss potential opportunities for True Indicating to sell products to Defendant Mesa Labs and for Defendant Mesa Labs to acquire True Indicating.

35.     Ultimately, True Indicating determined that it was not interested in pursuing a licensing agreement but expressed a willingness to consider the sale of all or part of its company depending on the proposed purchase offer. Defendant Mesa Labs then declined to take any further action, and as a result, no business relationship developed between the two companies. Jung, however, remained in contact with Defendant Wood and Riha.

36.     In early 2022, Defendant Mesa Labs' interest in establishing a relationship with True Indicating resurfaced. Jung prepared and sent to Defendant Wood in Toledo, Ohio a proposed Confidentiality Agreement, effective March 1, 2022, which according to Jung was necessary to enable Defendant Mesa Labs to evaluate the possibility of entering into a transaction under which it would acquire True Indicating's business relating to sterilization and disinfection monitoring products. Defendant Wood signed the Confidentiality Agreement on behalf of True Indicating. The parties executed a First Amendment to the Confidentiality Agreement on April 29, 2022, that stated Ohio law would apply to the choice of law questions and that Ohio's courts would be the exclusive forum for dispute resolution. A true and accurate copy of the First Amendment to the Confidentiality Agreement is attached hereto as Exhibit H.

9

37.     Once again, True Indicating and Defendant Mesa Labs did not reach a deal.

38.     During the course of the negotiations, Defendant Mesa Labs requested and received a copy of Defendant Wood's Employment Agreement with True Indicating.

**B.  Defendant Wood's "retirement" from True Indicating**

39.     On Friday, July 14, 2023, at 6:41 PM, Defendant Wood sent an email to True Indicating that she was "retiring" from True Indicating.

40.     Shortly thereafter, Defendant Wood began her employment as a Director of Quality Assurance and Regulatory Affairs for Defendant Mesa Labs, in clear violation of the restrictive covenants in Section 6 the Employment Agreement, which provides:

> During the term of this Agreement, and for a period of twenty-four (24) months thereafter, [Defendant Wood] shall not, without the express prior written consent of [True Indicating], directly or indirectly, render services of any nature to, or for, any entity which engages in any activity competitive with or adverse to [True Indicating's] business or practice, whether alone, as a partner, or as an officer, director, employee, or shareholder of any other corporation or as a trustee, fiduciary or other representative, or in any other capacity.

Defendant Wood's work with Defendant Mesa Labs violates this contractual obligation.

41.     Defendant Wood also agreed in Section 6 to not solicit any True Indicating to leave their employment with True Indicating.  Defendant Wood violated this obligation by soliciting True Indicating employees to leave their employment and, in one instance, work for Mesa Labs.

42.     In addition, Section 7(a) of the Employment Agreement Defendant Wood agreed not to use, publish, disseminate, or otherwise disclose to anyone, directly or indirectly, either during or after her employment any Confidential Information obtained during her employment with True Indicating.

43.     Among other things, Defendant Wood agreed that any "Confidential Information" was trade secrets, and included "computer software, codes and applications, market approaches,

intellectual property, proposed acquisitions, market strategies and plans, financial information, agreements, documents and other papers and electronic and other records which are owned or are otherwise in the possession of [True Indicating] in connection with the operation of [True Indicating's] business."

44.     Because this information is so critical to True Indicating, access to the information was limited. True Indicating implements several measures to protect its confidential and proprietary information, including but not limited to, restricting access to such information to authorized individuals; requiring authorized individuals to sign nondisclosure, non-compete, and non-solicitation agreements; establishing and enforcing internal policies and procedures; clearly marking files as "Confidential," and/or "Proprietary"; using video surveillance and a badging system that restricts public and employee building access; and requiring all visitors to be accompanied by an associate at all times.

45.     However, Defendant Wood had access to such information due to the nature of her position with True Indicating.

46.     True Indicating would not have hired Defendant Wood if she did not execute the Employment Agreement and agree to the restrictive covenant and nondisclosure obligations.

47.     Despite full knowledge of the restrictive covenants contained within Defendant Woods' Employment Agreement, Defendant Mesa Labs nonetheless extended an offer of employment to her as Director of Quality Assurance and Regulatory Affairs, which she accepted.

48.     True Indicating's Operating Agreement also restricts owners, which would include Defendant Wood, from working for a competitor in any capacity while owning a membership interest in True Indicating. *See* Exhibit B, paragraph 4(I). Defendant Wood's work with Defendant Mesa Labs violates this contractual obligation.

### C.  **The Forensic Scan of Defendant Wood's Laptop**

49.      Due to her highly suspicious downloading activity prior to her "retirement," Defendant Wood has most likely retained True Indicating's confidential and proprietary information after her employment. Further, Defendant Wood will likely use, or has already used, the information to enable Defendant Mesa Labs to improperly compete against Plaintiff True Indicating. The use of such information gives Defendant Mesa Labs an unfair advantage in selling products and services competitive with True Indicating.

50.      Upon information and belief, Defendant Wood retained True Indicating's confidential and proprietary information, including but not limited to, product formulas, methods, and processes; manufacturing techniques and chemical compositions; marketing strategies; customer lists and contact information; customized client solutions and/or service methodologies; supply contracts and pricing structures; internal policies not publicly disclosed; and supply chain logistics. Such information is directly related to the products and services True Indicating provides to its customers worldwide.

51.      Given Defendant Wood's employment with Defendant Mesa Labs as Director of Quality Assurance and Regulatory Affairs and her blatant and knowing breach of the Employment Agreement, Defendant Wood will inevitably and improperly use True Indicating's confidential and proprietary information, imminently and in the future, in further violation federal and state law and her employment agreement.

52.      As such, on August 14, 2023, counsel for True Indicating sent a letter to Defendant Wood reminding her of the restrictive covenants and her contractual obligations under the Employment Agreement.  *See* Exhibit C. No response was ever received from Defendant Wood or anyone claiming to represent her.

53.     Similarly, on December 5, 2023, counsel for True Indicating sent a letter to Defendant Mesa Labs to inform it of Defendant Wood's Employment Agreement, and the obligations therein. *See* Exhibit D. No response was ever received from Defendant Mesa Labs or anyone claiming to represent it.

### D.  **Mesa Labs Acquisition of GKE—True Indicating's Direct Competitor**

54.     According to Defendant Mesa Labs' 4th Quarter 10-Q filed on February 4, 2024, with the United States Securities and Exchange Commission under the Securities and Exchange Act of 1934, it reported that:

> In accordance with the sale and purchase agreement executed October 14, 2023, we acquired 100% of the outstanding shares of GKE GmbH and SAL GmbH effective October 16, 2023, and upon approval by applicable Chinese regulators, [Defendant Mesa Labs] acquired 100% of the outstanding shares of Beijing GKE Science & Technology Co. Ltd. ('GKE China' and, together with GKE GmbH and SAL GmbH, 'GKE'), effective December 31, 2023 (the "GKE acquisition"). ***GKE primarily develops, manufactures and sells a highly competitive portfolio of chemical sterilization indicators, biologics, and process challenge devices to protect patient safety across global healthcare markets. GKE's strength in chemical indicators and our Sterilization and Disinfection Control division's strength in biologic indicators are complementary, as chemical and biologic indicators are used in the same sterility validation workflows.***

In other words, Mesa Labs acquired two Chinese companies that compete with a substantially similar product to True Indicating.

55.     Defendant Mesa Labs readily advertises how GKE offers sterilization monitoring products:





*See* https://portal.gke-healthcare.com/mtc/products/list?cid (last visited August 1, 2025).

56.     These products directly compete against True Indicating's own products and service offerings of sterilization and disinfection monitoring products.

57.     Defendant Wood's employment with Defendant Mesa Labs directly violates the terms of the Employment Agreement and constitutes violations under state and federal law. At no time did True Indicating relieve Defendant Wood of her contractual obligations, nor did True Indicating ever consent to her employment with Defendant Mesa Labs.

58.    Despite such knowledge, Defendant Mesa Labs has not stopped employing Defendant Wood and continues to facilitate and encourage her unlawful conduct and violations of the restrictive covenants. As a result, Defendant Mesa Labs, through its employment of Defendant Wood, is also illegally accessing and potentially using True Indicating's confidential and proprietary information.

## COUNT I

### VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) AGAINST BOTH DEFENDANTS

59.    True Indicating adopts by reference the above averments as if fully rewritten herein.

60.    True Indicating possessed trade secret information, including the confidential and proprietary information described in the Employment Agreement, and took reasonable steps to protect its secrecy.

61.    The confidential and proprietary trade secret information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosures and is related to a product or service used in, or intended for use in, interstate and foreign commerce.

62.    Defendant Wood, through her employment with and ownership interest of True Indicating was given access to True Indicating's confidential and proprietary trade secret information.

63.    Defendant Wood, through her new employment as Director of Quality Assurance and Regulatory Affairs, has used or disclosed, or threatened to use or disclose, True Indicating's confidential and proprietary information on behalf of herself and Defendant Mesa Labs without True Indicating's express or implied consent.

15

64.     Defendant Mesa Labs, by utilizing its relationship with Defendant Wood, has used or threatens to unfairly and unlawfully use True Indicating's confidential and proprietary trade secret information without True Indicating's express or implied consent.

65.     Defendants' unauthorized use and disclosure of True Indicating's confidential and proprietary trade secret information has caused True Indicating to suffer damages.

66.     Furthermore, unless restrained from doing so, Defendants will proceed to use or disclose, or threaten to use or disclose, True Indicating's confidential and proprietary trade secret information, thereby causing True Indicating irreparable harm and damages.

67.     Accordingly, True Indicating is entitled to injunctive relief and an award of damages, including attorneys' fees.

## COUNT II

### TRADE SECRET MISAPPROPRIATION UNDER R.C. 1333.61 *ET SEQ.*, AGAINST BOTH DEFENDANTS

68.     True Indicating adopts by reference the above averments as if fully rewritten herein.

69.     True Indicating possessed trade secret information, including the confidential and proprietary information described in the Employment Agreement, and took reasonable steps to protect its secrecy.

70.     Defendant Wood's relationship with True Indicating as President and Chief Operating Officer created a duty of confidentiality and trust to True Indicating.

71.     Defendant Wood's knowledge of True Indicating's confidential and proprietary trade secret information was acquired only as a result of Defendant Wood's relationship with True Indicating, which was gained by confidence, trust, and through the execution of the Employment Agreement and obligation not to disclose such information to any unauthorized parties, or to use, or threaten to use, said information.

16

72.     Defendants' acquisition and misuse, as well as their continued threatened disclosure or misuse, of True Indicating's confidential and proprietary trade secret information constitutes a misappropriation of trade secrets under Ohio common law and R.C. § 1333.61, *et seq*.

73.     Unless restrained by order of this Court, Defendants will be able to unfairly and unlawfully use or disclose True Indicating's confidential and proprietary information to benefit Defendant Mesa Labs and/or other competitors of True Indicating.

74.     Ohio Revised Code § 1333.62 authorizes this Court to enjoin actual or threatened misappropriation of trade secrets for so long as necessary to eliminate the commercial advantage that otherwise would be derived from the misappropriation.

75.     Any disclosure, use, or making known of True Indicating's confidential and proprietary information to True Indicating's competitors would cause True Indicating to suffer irreparable harm for which there is no adequate remedy at law. Unless the relief requested herein is granted, the unlawful disclosure and use of True Indicating's confidential and proprietary information will result, causing a loss of business which True Indicating may never be able to regain.

76.     Once True Indicating's confidential and proprietary information is disclosed by Defendants, the competitive injury to True Indicating cannot be undone.

77.     By virtue of Defendants' misappropriation, True Indicating is entitled to an award of compensatory damages.

78.     In addition, Defendants' misappropriation was intentional and malicious, therefore True Indicating is entitled to an award of exemplary damages and attorneys' fees, pursuant to R.C. § 1333.63.

## COUNT III

**BREACH OF THE EMPLOYMENT AGREEMENT AGAINST DEFENDANT WOOD**

79.     True Indicating adopts by reference the above averments as if fully rewritten herein.

80.     As a condition of and in consideration of employment, Defendant Wood executed the Employment Agreement restricting her for a period of twenty-four months following the termination of her employment with True Indicating from, directly or indirectly, rendering services for any nature to or for any entity which competes with or is adverse to True Indicating's business or practice. She also agreed not to use or otherwise disclose, directly or indirectly, True Indicating's confidential and proprietary information.

81.     Defendant Wood also agreed in Section 6 to not solicit any True Indicating to leave their employment with True Indicating. Defendant Wood violated this obligation by soliciting True Indicating employees to leave their employment and, in one instance, work for Mesa Labs.

82.     The restrictions set forth in the Employment Agreement are reasonable and necessary to protect the legitimate business interests of True Indicating.

83.     In paragraph 9 of the Employment Agreement, Defendant Wood conceded that her breach of its terms and provisions would cause True Indicating to sustain irreparable injury and damages for which a legal remedy would be inadequate and agreed that in the event of such a breach, True Indicating would be entitled to preliminary and permanent equitable relief prohibiting such actions. She further expressly agreed that she would be responsible for and indemnify True Indicating against any and all costs and expenses, including attorneys' fees incurred in the attempt to enforce the terms of the Employment Agreement.

84.     True Indicating has abided by and performed all of its obligations under the terms of the Employment Agreement.

18

85.     Defendant Wood breached the Employment Agreement through her employment with Defendant Mesa Labs and, upon information and belief, by using and/or disclosing True Indicating's confidential and proprietary information.

86.     Defendant Wood's breaches of the Employment Agreement have caused True Indicating to suffer damages in an amount to be determined at trial.

87.     In addition, Defendant Wood agreed in paragraph 9 of the Employment Agreement that "[i]n the event that [Defendant Wood] breaches or threatens to breach this Agreement, [Defendant Wood] agrees that [she] shall be responsible for, and shall indemnify and hold [True Indicating] harmless against, an and all attorney fees, costs, an other expenses incurred by [True Indicating] in connection its efforts to enforce the covenants and agreements made by [Defendant Wood] in this Agreement."

88.     Therefore, the Court should award Plaintiff its reasonable attorney fees and costs in bringing this action.

## COUNT IV

### BREACH OF THE OPERATING AGREEMENT AGAINST DEFENDANT WOOD

89.     True Indicating adopts by reference the above averments as if fully rewritten herein.

90.     As a condition of and in consideration of her membership interest in True Indicating, Defendant Wood executed the Operating Agreement restricting her from competing with True Indicating, directly or indirectly, during the time of her membership and for a period of 3 years thereafter. *See* Exhibit B, paragraph 4(I).

91.     She also agreed that all intellectual property created during the term of her membership, as well as all work product, belongs to True Indicating. *See id.*

19

92.     True Indicating has abided by and performed all of its obligations under the terms of the Employment Agreement.

93.     Defendant Wood breached the Operating Agreement through her employment with Defendant Mesa Labs and by downloading True Indicating's files containing confidential and proprietary information just minutes before her resignation for the purpose of, upon information and belief, using and/or disclosing such information.

94.     Defendant Wood's breaches of the Employment Agreement have caused True Indicating to suffer damages in an amount to be determined at trial.

## COUNT V

### BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT WOOD

95.     True Indicating adopts by reference the above averments as if fully rewritten herein.

96.     From October 31, 2017 until April 26, 2022, Defendant Wood was the acting President and Chief Operating Officer of True Indicating. From April 26, 2022 through July 14, 2023, Defendant Wood retained the title of President but was acting as the Director of Sales and Marketing and Purchasing Manager.

97.     In such a position, she owed and was charged with a fiduciary duty in all of her dealings on behalf of her employer.

98.     Defendant Wood breached her fiduciary duty to True Indicating by entering into self-interested transactions and agreements with her husband's company, Douglander, without a determination that it was a qualified vendor, and without disclosure to or approval by True Indicating's owner and managers, for the purchase of 863,469 six millimeter stainless steel discs, which resulted in excessive payments and gains to Douglander, and excessive costs incurred by True Indicating in the amount of $90,516.00.

99.     Similarly, Defendant Wood entered into another agreement with Douglander for routing a ream of paper, where she paid Douglander to make the router template, and then paid Douglander excessive costs of $15,335.00 to route the reams of paper rather than performing the work in-house, which benefited her and her husband's company to the detriment of True Indicating.

100.    As a result of Defendant Wood's breaches of her fiduciary duty owed to True Indicating, True Indicating has been damaged in an amount exceeding $105,851.00.

## COUNT VI

### TORTIOUS INTERFERENCE WITH CONTRACT AGAINST DEFENDANT MESA LABS

101.    True Indicating adopts by reference the above averments as if fully rewritten herein.

102.    True Indicating and Defendant Wood entered into a valid contract under the Employment Agreement.

103.    Defendant Mesa Labs had knowledge of Defendant Wood's relationship with True Indicating and her Employment Agreement prior to extending an offer of employment to her, and was reminded of the Employment Agreement on December 5, 2023 by letter from True Indicating's counsel.

104.    Through the acts and conduct set forth herein, Defendant Mesa Labs, without privilege or justification to do so, intentionally induced or otherwise purposely procured or caused Defendant Wood to breach her Employment Agreement with True Indicating, thereby causing True Indicating harm.

105.    Without Defendant Mesa Labs' interference, Defendant Wood would not have breached her Employment Agreement with True Indicating.

106.   By virtue of Defendant Mesa Labs' tortious interference with Defendant Wood's Employment Agreement, True Indicating is entitled to an award of compensatory damages.

107.   In addition, Defendant Mesa Labs acted with actual malice and conscious disregard of True Indicating's rights under the Employment Agreement when it hired Defendant Wood with full knowledge that such employment would violate her restrictive covenants, thereby entitling True Indicating to recover punitive damages and attorneys' fees.

**WHEREFORE**, Plaintiff True Indicating, LLC demands the following relief against Defendant Julie Ann Wood and Defendant Mesa Laboratories, Inc.:

A.   An order for preliminary injunction, to be made permanent upon trial, enjoying Defendants from using or disclosing and of True Indicating's confidential and proprietary information that was acquired, learned, or known by Defendant Wood during and/or as a result of her employment with True Indicating;

B.   An order for preliminary injunction, to be made permanent upon trial, directing Defendants to return any confidential and proprietary information of True Indicating's back to True Indicating in all forms and formats retained by Defendants;

C.   An award of money damages in favor of True Indicating against Defendants;

D.   An award of attorneys' fees in favor of True Indicating against Defendants;

E.   An award of punitive damages against Defendants;

F.   Any other such relief as this Court deems just and equitable.

Respectfully submitted,

*/s/ Mark D. Wagoner*
Mark D. Wagoner (0068577)
Alia A. Kadri (0100721)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio  43604
Telephone:   419.241.9000
Fax:              419.241.6894
Email:           mwagoner@shumaker.com
                     akadri@shumaker.com

Dated: August 8, 2025                    *Attorneys for Plaintiff True Indicating, LLC*

## DEMAND FOR JURY TRIAL

Plaintiff True Indicating, LLC requests a jury trial.

Respectfully submitted,

*/s/ Mark D. Wagoner*
Mark D. Wagoner (0068577)
Alia A. Kadri (0100721)
SHUMAKER, LOOP & KENDRICK, LLP

*Attorneys for Plaintiff True Indicating, LLC*